IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:03-CR-00224-GCM

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | |
| v. | ORDER |
| HERMAN LAMARK HUNTER, | |
| Defendant. | |

This matter is before the Court on Defendant Herman Hunter's Motion for Reduced Sentence under Amendment 821 to the United States Sentencing Guidelines and 18 U.S.C. § 3582(c)(2). (Doc. No. 98). Defendant's Motion can also be construed liberally as a Motion for Compassionate Release. Upon careful consideration of the arguments submitted by the parties, Defendant's Motion is **DENIED**.

## I. BACKGROUND

In October of 2003, police learned that Hunter was selling crack from his home in Charlotte, North Carolina. Doc. No. 94 ¶ 8. Police executed a search warrant at Hunter's home and found 5.6 grams of crack cocaine, a loaded firearm that had been stolen, and a small amount of marijuana. *Id.* at ¶ 9. Hunter admitted that these items belonged to him. *Id.* at ¶ 11. Police later executed a second search warrant at the same home, which Hunter shared with Kimberly Ingram, in February of 2004. *Id.* at ¶¶ 8, 14. During the search, police seized a letter from Hunter to Ingram in which Hunter asked Ingram to lie about who was responsible for the crack cocaine and firearm found during the first search and to tell police that she did not hear Hunter confess his responsibility for those items. *Id.* at ¶ 14.

At the time Hunter committed his offenses, he had previously been convicted of three felony drug offenses, assault on a government official, and voluntary manslaughter. *Id.* at ¶¶ 42, 49, 55, 58, 60. Hunter committed at least one offense and often multiple offenses in every year he was not imprisoned between the ages of 16 and 29. *Id.* at ¶¶ 41–61. He also served lengthy terms of imprisonment after receiving sentences of 3 years, 4 years, and 7 years and violated his conditions of probation or parole. *Id.* at ¶¶ 42, 49, 55. Hunter was released from custody only six months before police searched his home in October of 2003. *Id.* at ¶ 61.

In April 2005, a jury convicted Defendant of one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possessing with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(B). This Court's probation office submitted a presentence report and calculated a preliminary adjusted offense level of 30. *Id.* at ¶ 35. The probation office also found that Hunter was a career offender and that the career-offender guideline provided for an adjusted offense level of 37. *Id.* at ¶¶ 36–37. Based on a total offense level of 37 and a criminal-history category of VI, the Sentencing Guidelines advised a range of between 360 months and life in prison. *Id.* at ¶ 79. Defendant faced a statutory mandatory-minimum of 10 years and a maximum of life in prison for the drug-trafficking offense and a statutory maximum of 10 years in prison for the felon-in-possession offense. *Id.* at ¶ 78.

This Court sentenced Hunter to a statutory maximum of 120 months in prison for his felon-in-possession offense and 360 months in prison for his drug-trafficking offense, to run concurrently. *Id.*; Doc. No. 66 at 2.

In December of 2020, Hunter moved to reduce his sentence under the First Step Act. Doc. No. 85. Defendant's sentence was ultimately reduced to 300 months in prison. Doc. No. 90 at 3.

2

While in the Bureau of Prisons, as of January of 2021, Hunter had committed 73 disciplinary infractions since 2007, and these infractions include violent and non-violent offenses. Doc. No. 87 at 2–4. Hunter has completed only 11 educational or work programs in the more than 14 years he has been housed in the Bureau of Prisons. *Id.* at 4. Defendant now moves for a reduction in sentence or for compassionate release.

## II. DISCUSSION

### A. Amendment 821

The Court will first address Defendant's request to reduce his sentence under Amendment 821 to the Sentencing Guidelines and 18 U.S.C. § 3582(c)(2).

Amendment 821 to the Sentencing Guidelines made two changes to chapter 4 of the Sentencing Guidelines related to a defendant's criminal history. *See* U.S.S.G. amend. 821. The Sentencing Commission has made Part A and Part B, Subpart 1, of Amendment 821 retroactively applicable, authorizing eligible defendants to seek a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2). U.S.S.G. amend. 825; *see* U.S.S.G. § 1B1.10(d).

Part A of the amendment alters Sentencing Guidelines § 4A1.1 to strike the two status points previously assessed under § 4A1.1(d) for defendants who committed their offense while under any criminal-justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. *Id.* pt. A. Part A adds a new subsection (e) that adds one criminal-history point for any defendant who receives 7 or more points and who committed his offense while under any criminal-justice sentence as described above. *Id.*

Part B, Subpart 1, of Amendment 821 adds a new guideline provision to chapter four, U.S.S.G. § 4C1.1. This new guideline authorizes a two-offense-level decrease for certain defendants who have zero criminal-history points. U.S.S.G. amend. 821 pt. B. A defendant is not

3

eligible for this reduction if (1) he received a terrorism adjustment under U.S.S.G. § 3A1.4; (2) he used violence or credible threats of violence in connection with his offense; (3) the offense resulted in death or serious bodily injury; (4) the offense was a sex offense; (5) he personally caused substantial financial hardship; (6) he possessed, received, purchased, transported, transferred, sold, or otherwise disposed of a firearm or other dangerous weapon in connection with the offense; (7) the offense was an offense involving individual rights covered by U.S.S.G. 2H1.1; (8) he received a hate-crime-motivation or vulnerable-victim adjustment, U.S.S.G. § 3A1.1; (9) he was convicted of a serious-human-rights offense, U.S.S.G. § 3A1.5; (10) he received an aggravating-role adjustment, U.S.S.G. § 3B1.1; or (11) he was engaged in a continuing criminal enterprise as defined in 18 U.S.C. § 848. *Id.*

For defendants who meet the requirements of Amendment 821, Sentencing Guidelines § 1B1.10 governs eligibility for a sentence reduction. Section 1B1.10(a)(1) authorizes a district court generally to reduce a defendant's sentence in any case in which a defendant is serving a term of imprisonment and the guideline range applicable to the defendant "has subsequently been lowered as a result" of a retroactively applicable amendment to the Guidelines." A defendant is not eligible for a sentence reduction if the retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). A court is limited to a reduction to the bottom of the amended guideline range, after calculating the range that would have applied had the guideline amendment been in effect when the defendant was sentenced. *Id.* § 1B1.10(b)(2). In calculating the amended range, "the court shall substitute only" the retroactively applicable guideline amendment and "leave all other guideline application decisions unaffected." *Id.* § 1B1.10(b)(1). If the defendant received a sentence below the applicable guideline range based on a motion filed by the United States for substantial assistance,

the court may reduce the defendant's sentence to a term "comparably less than the amended guideline range." *Id*. § 1B1.10(b)(2)(B). Under no circumstances shall a defendant's sentence be reduced to a term less than the term he has already served. *Id*. § 1B1.10(b)(2)(C).

The Court finds that the Defendant is not eligible for a sentence reduction under Amendment 821. The probation office assessed him two points because he committed his offense while under a criminal-justice sentence, as required for eligibility under Part A of Amendment 821. But he was assessed so many criminal-history points that a reduction of two points does not alter his criminal-history category of VI. *See* Case No. 3:03CR224, Doc. 94 ¶ 64. In addition, Hunter is not a zero-point offender, eligible for a sentence reduction under Part B of Amendment 821.

### B. Compassionate Release

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a district court may reduce a defendant's sentence, after considering the sentencing factors in § 3553(a), if the court determines that (1) extraordinary and compelling reasons warrant a sentence reduction and (2) a sentence reduction is consistent with "applicable policy statements issued by the Sentencing Commission." Section 3582(c)(1)(A) also requires a defendant to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

The Sentencing Commission's policy statement applicable to compassionate release requests is Sentencing Guidelines § 1B1.13. While the Fourth Circuit held in *United States v. McCoy* that § 1B1.13 was not an "applicable policy statement" limiting a district court's authority to grant compassionate release because the Sentencing Commission had not amended § 1B1.13 to incorporate changes to § 3582(c)(1)(A) made by the First Step Act, 981 F.3d 271, 282 (4th Cir.

5

Case 3:03-cr-00224-GCM-CH    Document 107    Filed 07/22/24    Page 5 of 8

2020), the Sentencing Commission has since amended § 1B1.13, effective November 1, 2023. The amended policy statement now governs Defendant's motion for compassionate release.

As amended, § 1B1.13 authorizes this Court to grant a motion for compassionate release if the Court finds that extraordinary and compelling reasons warrant a sentence reduction and that the defendant is not a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a). Section 1B1.13(b) outlines six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release: (1) medical circumstances of the defendant, (2) the age of the defendant, (3) a defendant's family circumstances, (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury," (5) "other reasons" similar in gravity as those articulated in (1) through (4), and (6) an unusually long sentence. In reference to the last factor, subsection (6) states:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

The factors in § 3553 are considered when imposing sentences and include, amongst others, (1) the nature of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes, and provide the defendant with needed educational or vocal training, medical care, or other correctional treatment, (3) the kinds of sentences available, (4) the need to avoid

unwarranted sentence disparities among defendants with similar records, and (5) the need to provide restitution to victims.

Defendant Hunter's motion for compassionate release suffers from a fatal flaw. Hunter has not shown that he has exhausted his administrative remedies by first asking the Bureau of Prisons to grant him compassionate release, and his doing so is a requirement of the statute authorizing this Court to consider such a request. *See* 18 U.S.C. § 3582(c)(1)(A). The Bureau of Prisons reports that it has no record of a compassionate-release request, and Hunter has not produced one.

Even if Hunter had shown that he exhausted his administrative remedies, he has not identified any extraordinary and compelling reason to grant him compassionate release. Hunter suggests that if sentenced today, he would benefit from a change in the Sentencing Guidelines relating to 18 U.S.C. § 924 and "career criminal," but Hunter was not convicted of a § 924(c) firearm offense. Nor was he sentenced as an armed career criminal. He was classified as a career offender, but the same predicate offenses identified by the probation officer would still qualify him as a career offender. *See* U.S.S.G. § 4B1.2(a), (b). Hunter has not identified any change in law that would alter his sentence of 300 months, if he were sentenced today.

In addition, the factors in 18 U.S.C. § 3553(a) weigh against compassionate release. Hunter's offense conduct was serious. And his conduct in prison has been less than ideal, with Hunter committing 73 disciplinary infractions since 2007, some of which were violent offenses. He has not shown that he is no longer a threat to the community, and the need to protect the public, the need to deter Hunter and others from committing similar offenses, the nature and circumstances of his offense conduct, and his history and characteristics all weigh against any discretionary sentencing relief. The Court agrees with the Government that the factors outlined in § 3553(a) do

7

Case 3:03-cr-00224-GCM-CH   Document 107   Filed 07/22/24   Page 7 of 8

not favor compassionate release even if Defendant could demonstrate "extraordinary and compelling reasons" and could show that he exhausted his administrative remedies.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release (Doc. No. 98) is hereby **DENIED**.

Signed: July 22, 2024

Graham C. Mullen
United States District Judge